UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDAN BAKER, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>CVS HEALTH CORPORATION and CVS PHARMACY, INC.,<br><br>        Defendants. | Civil Action No. 23-cv-11483 |

### DEFENDANTS' SUPPLEMENTAL BRIEFING ON STANDING IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

On September 21, 2023, in response to Defendants' Motion to Dismiss the Amended Complaint,[1] the Court Ordered the parties to provide "supplemental briefing on standing." (ECF 27.) As set forth below, Plaintiff does not have standing to pursue this case because Plaintiff alleges neither that the specific "interview" in which he claims to have participated actually constitutes a lie detector test under the Lie Detector Statute, nor that he was otherwise unaware of the Massachusetts Lie Detector Statute and that such knowledge would have changed anything for him. Instead, Plaintiff's claim rests on an alleged violation of the Lie Detector Statute's "notice" requirement, a bare procedural violation, which is insufficient to allege a concrete and particularized injury that this Court could possibly remediate as required by the Article III of the United States Constitution. Because Plaintiff has no standing to proceed before with his current claim in this Court, his Amended Complaint should be dismissed.

---

[1] Defendants CVS Health Corporation and CVS Pharmacy, Inc. moved to dismiss the Amended Complaint (*see* ECF 22–23) because Plaintiff Brendan Baker cannot maintain a cause of action under the Massachusetts Lie Detector Statute, Mass. Gen. Laws ch. 149 § 19B (the "Lie Detector Statute"). Although Baker's claims are premised on an alleged failure to provide adequate notice under the Lie Detector Statute, no private cause of action exists under the Lie Detector Statute for a "notice" violation.

**I.   PLAINTIFF LACKS STANDING TO PURSUE A CLAIM PREMISED ON A BARE PROCEDURAL VIOLATION DIVORCED FROM ANY CONCRETE INJURY.**

The United States Supreme Court has held that Article III of the U.S. Constitution requires that, as a threshold procedural matter, a party must have standing to invoke the jurisdiction of the federal[2] courts. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Thus, to satisfy Article III, a plaintiff must allege (and ultimately prove) that he has a genuine stake in the outcome of the case because he has personally suffered (or will imminently suffer): "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To establish an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 , 731–32 (1st Cir. 2016).

Here, Plaintiff has not alleged a "concrete" injury. *See Spokeo*, 578 U.S. at 340. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. Allegations about bare procedural violations, divorced from any concrete harm, do not satisfy the injury-in-fact requirement of Article III. *Id.* In *Spokeo*, in the context of the Fair Credit Reporting

---

[2] Massachusetts courts apply a similar standard that would also preclude this action. *See, e.g.*, *Kenn v. Eascare,* No. 19-1550, 2022 Mass. Super. LEXIS 361, at *9  (Mar. 10, 2022) ("To have standing in both federal court and state court, Plaintiff must allege that she was injured as a result of the defendant's actions.") In *Kenn*, the court held that claims based merely on the receipt of a "non-compliant Disclosure Form," would not meet the Massachusetts test for standing. *Id.*

Act, the Supreme Court explained that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 578 U.S. at 342. The Supreme Court explained that if a credit agency fails to provide a notice of rights to a consumer, but nonetheless furnishes "accurate" information, there would be no "harm." *Id.* Similarly, minor "inaccuracies" in a credit report, such as an inaccurate zip code, also do not create "concrete harms" that could be litigated. *Id.*

Plaintiff's allegation that he did not receive notice about Massachusetts' anti-lie detector law when filling out a job application is precisely the type of "bare procedural violation" that the Supreme Court held cannot satisfy Article III's standing demands. Further, Plaintiff does not allege that he suffered any "'downstream consequences' from failing to receive the required information." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021). And the absence of such allegations is dispositive on the issue of standing because "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* (quoting *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

It is not clear what kind of "downstream consequence" Plaintiff might claim he suffered as a result of Defendants' alleged failure to provide him the required notice. He does not allege that he was deprived of a job opportunity as a result, or even that he had to endure an actual "lie detector" test. And even if he had, he has not connected the Commonwealth's "notice" requirement to his participation in that interview.

### A. Plaintiff Does Not Allege That He Took A Lie Detector Test Because He Did Not Receive Notice About Massachusetts Law.

To rely upon a mere procedural violation to establish standing, Plaintiff must allege and ultimately establish some specific "downstream consequence" connected to Defendants' alleged failure to provide him with notice about lie detectors. To start, a plaintiff might try to allege that

he was (1) subjected to a lie detector test that he would not have otherwise taken (2) because he was deprived notice. He does not. In fact, he does not even allege that he *took* a lie detector test at all.

The closest Plaintiff comes to alleging that he was subjected to a lie detector test is when he claims "Plaintiff Baker participated in an interview with Defendants using Defendants' automated interview and application software. Mr. Baker was not hired." (ECF 17, First Am. Compl. ¶ 8.) But he never directly alleges that this alleged participation constituted subjecting him to a "lie detector."

Rather than directly claim that his "interview" constituted a lie detector test, Plaintiff describes a third-party software platform called HireVue and, using marketing statements from HireVue's website about some of the capabilities that HireVue advertises, lists some of HireVue's hypothetical capabilities. (*See id*. at ¶¶ 17–26.) While he claims that Defendants use HireVue, Plaintiff fails to allege any specific questions that he was posed, fails to allege that questions posed to him fall within HireVue's alleged "lie detection" capabilities, and fails to allege that *his* interview was processed through HireVue's alleged "lie detection" capabilities. Absent such allegations, Plaintiff has not reasonably pled that *he* was subjected to a process that constitutes "lie detection" under the Lie Detector Statute.

Even if Plaintiff did adequately allege that he was subjected to a "lie detector" by virtue of his participation in an "automated interview," he still could not reasonably claim that this participation is a "downstream consequence" of the alleged notice violation that he is attempting to pursue.

Again, to rely upon a so-called "informational injury" (i.e., failure to receive required information) to establish standing, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021),

4

the plaintiff must allege "downstream consequences" from failing to receive that information that show an interest in using the information "beyond bringing [this] lawsuit," *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *TransUnion*, 141 S. Ct. at 2214, and *Laufer v. Looper*, 22 F.4th 871 , 881 (10th Cir. 2022)). Naturally, a downstream consequence must be concrete—not "hypothetical." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *see also Shi v. TL & CG Inc.,* No. 19-CV-08502 (SN), 2022 U.S. Dist. LEXIS 121980, at *23 (S.D.N.Y. July 11, 2022) (concluding that a plaintiff lacked standing to bring wage notice and statement claims under the New York Labor Law because his allegations that defendants' lack of notice "facilitated" his underpayment stated only a "hypothetical" harm).

Here, Plaintiff does nothing to suggest that the alleged failure to provide him notice under the Lie Detector Statute caused him any actual, concrete harm. Even if he did take a "lie detector test," he does not allege that receipt of the notice would have prevented any alleged harm. The only "notice" that Plaintiff claims he didn't receive would have merely said:

> It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability.

Mass. Gen. Laws ch. 149 § 19B

Plaintiff does not explain how reading this notice would have been helpful to him in the circumstances he vaguely describes. He does not allege that he would have abandoned the application process to avoid answering questions. He does not allege that he was denied a job as a result of the application of a lie detector to his answers. Any suggestion by Plaintiff that reading the mandatory notice would have caused him to decline to participate in any aspect of an "interview" is impermissibly hypothetical and implausible, but equally importantly, not in the operative pleading. *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 U.S. Dist. LEXIS

57481, at *35 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the [New York Labor Law], so she lacks standing to recover on that claim."). In the end, Plaintiff has merely alleged a procedural violation of the Massachusetts Lie Detector Statute, with no allegation of "downstream consequences" that resulted in concrete, redressable harm. As a result, Plaintiff has not asserted a redressable injury under federal or state standing doctrines, and this action should be dismissed.

## CONCLUSION

For all of the foregoing reasons, and the reasons originally briefed, Defendants' motion to dismiss should be granted.

DATED: October 6, 2023                                Respectfully submitted,

*/s/ James J. Swartz*
Anthony S. Califano (BBO 661136)
acalifano@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA  02210-2028
Telephone:   (617) 946-4800
Facsimile:   (617) 946-4801

James J. Swartz (Pro Hac Vice)
jswartz@seyfarth.com
Andrew M. McKinley (Pro Hac Vice)
amckinley@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E. Suite 2500
Atlanta, GA 30309
Telephone:   404-888-1500
Facsimile:   404-724-1575

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I certify that on today's date, the foregoing document was electronically filed with the Clerk of Court through the CM/ECF system and will be sent electronically to registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants if any.

*/s/ James J. Swartz*
James J. Swartz